USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/17/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
    YORDANOS TESFAY,

                              Plaintiff,

                -v-

    HANESBRANDS INC.,

                            Defendant.
------------------------------------------------------------- X

1:19-cv-3889-GHW

ORDER

GREGORY H. WOODS, United States District Judge:

      Plaintiff Yordanos Tesfay, is "best known for being the first full-figured fashion model to become a COVERGIRL." Amended Complaint ("AC"), Dkt No. 17, ¶ 5. In 2008, she entered into a contract with Defendant HanesBrands, Inc. ("Hanes") for her professional modeling services. Ex. A to AC (the "Agreement"). She now alleges that Hanes breached the Agreement by continuing to use images of her after its termination. Tesfay also alleges that Hanes' use of the same images violated section 51 of the New York Civil Rights Law. Because Tesfay has not plausibly alleged that Hanes—as opposed to Hanes' customers or licensees—used images of her after such use was permitted by the Agreement, Hanes' motion to dismiss is GRANTED.

# I. BACKGROUND[1]

## A. The Agreement

Tesfay and Hanes entered into the Agreement on June 11, 2008. AC ¶ 7; Agreement at 9.[2] The Agreement defines Tesfay as the "Model" and Playtex[3] as the "Client." In the Agreement, Tesfay agreed to model Playtex products in exchange for monetary compensation. Section 1 of the Agreement states that "Model shall furnish Services as described herein." Agreement at 10. The Agreement defines "Services" as requiring Tesfay to "appear at the Photo Shoot (hereinafter defined) and provide his/her professional modeling services by posing for photographs wearing the Products and otherwise following the direction or instruction of the photographer, Client and Agency." Agreement at 9. The Agreement further defines "Products" as "[a]pparel products manufactured, promoted, sold, or offered for sale by or on behalf of Client under the brand name PLAYTEX, or any other sub-brand thereof, and to include all private label variations of the branded styles involved." *Id.*

The Agreement sets forth principles governing the use of photographs of Tesfay. The Agreement defines "Permissible Uses" as including certain "General Uses." *Id.* These General Uses include "[p]romotional and marketing uses, including, without limitation, retailer and other catalogs/magalogs, direct marketing materials, trade advertising materials and trade brochures, and store circulars" and "[a]ll Internet uses, including advertising and display on web sites designated by Client and on web sites owned by Client's customers." *Id.*

---

[1] Unless otherwise noted, the facts in this section are drawn from the AC and the Agreement, which is attached as an exhibit to the AC. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." (citations omitted)).
[2] Citations to ECF documents refer to the ECF pagination.
[3] The AC alleges that "Hanes acquired Playtex in 2007 and is the parent company of the Playtex brand directly responsible for manufacturing, marketing, advertising and selling of the Playtex branded goods." AC ¶ 4. Defendant has not argued here that it is an improper defendant. Therefore, for purposes of this opinion, the Court assumes without holding that Hanes is legally bound by the Agreement's terms.

The Agreement also grants Playtex a license to use images of Tesfay while it is operative. Moreover, in addition to the license, the Agreement provides Playtex ownership of the copyrights to the images of Tesfay. Playtex's ownership interest in the copyrights to the images is not subject to expiration or termination. In addition, Tesfay is obligated to provide reasonable assistance to Playtex to ensure that it secures registration of the copyright.[4] In section 7, titled "Copyright," the Agreement provides that Playtex has "complete, exclusive, and worldwide ownership of all copyright rights, in and to the Materials (and all copies and versions thereof)."[5] *Id.* In section 3 of the Agreement, entitled "Grant of Rights," the Agreement provides that

> Model hereby irrevocably grants to Client and its licensees, successors and assigns (hereafter collectively referred to as the 'Licensed Parties') the exclusive right and license to reproduce, publish, distribute, use, create derivative works from, edit, alter, retouch, crop or otherwise use the Images in whole or in part, independently or combined with materials created to advertise, promote and sell the Product . . . in each media identified as a Permissible Use during the Use Periods[.]

*Id.* at 11.

The Agreement contains limitations on the use of images of Tesfay by Playtex after specified Use Periods. Section 6 of the Agreement states that "[u]pon termination or expiration of all Use Periods, Client shall not use the Images or produce ship or distribute any Material incorporating the Images (ex[ce]pt as permitted by the Non-Restricted Use Rights)." *Id.* at 11. The Agreement defines "Use Periods" as including a "General Use Period" and an optional "Renewal Period." *Id.* at 10. The General Use Period permits Playtex to use images of Tesfay for "[o]ne (1) year commencing on the date of first Commercial Use . . . of any Image . . . in any manner within the definition of General Uses."[6] *Id.* (emphasis omitted). The definition of the optional "Renewal

---

[4] Because Tesfay does not own the copyright, she cannot directly sue third parties that allegedly use images of her in violation of the copyright.
[5] The Agreement defines the "Materials" as "materials created to advertise, promote and sell the Products[.]" *Id.* at 11.
[6] The Agreement defines a "Commercial Use" as a "use external to Client for the express purpose of advertising, selling,

3

Period" grants Playtex the "sole discretion" to renew "all General Uses . . . for additional one (1) year consecutive periods, commencing at the expiration of the General Use Period, or the preceding renewal period." *Id.* (emphasis omitted). The Agreement requires that Tesfay be paid for renewals. *Id.*

The Agreement defines the scope of Playtex's obligations after the expiration of the Use Periods for which Tesfay was compensated. In section 6 of the Agreement, titled "Cessation of Use," the Agreement states that "[u]pon the termination or expiration of all Use Periods, Client shall not use the Images or produce, ship, or distribute any Material incorporating the Images[.]" *Id.* at 11. However, the same section stipulates that Playtex "shall not be required to recall or remove any Materials incorporating Images or compensate Model for any use of such Materials remaining in Post Term Circulation." *Id.*[7]

### B. Post-Agreement Conduct

The AC alleges that "[a]fter executing the Agreement, Plaintiff appeared and fully performed as per the terms of the Agreement[.]" AC ¶ 9. "Defendant sent a 'Usage Renewal Request' to Plaintiff on August 16, 2011[.]" *Id.* ¶ 12. "This request also stipulate[d] that the 'Renewal Usage Start/End Date' would be May 15, 2011." *Id.* On June 21, 2012, Hanes sent an email to Tesfay's modeling agent stating that "the brand team has confirmed that all images of Jordan have been disco'd and are no longer in use." *Id.* ¶ 22.

### C. Alleged Breach

The AC alleges that "[d]uring a recent search that was made by Plaintiff on March 1, 2019 under her name . . . images from the original photo shoot appeared in use on multiple 'customer'[8] web sites in connection with the promotion and advertisement for sale of a Playtex 18 hour comfort

---

or promoting the Products[.]" *Id.* at 10.
[7] The Agreement provides that it "will be governed by the laws of the State of New York[.]" *Id.* ¶ 12.
[8] The AC alleges that "Sears, Kmart, and Boscov's are . . . customers of Defendant and/or its Playtex brand." *Id.* ¶ 16.

lace wire free bra." *Id.* ¶ 19. The images appeared on the websites of Sears and K-Mart. *Id.* "Further, as part of a hard copy circulated publication to residents of New Jersey in March 2019, Boscov's Inc. published" the same image of Tesfay "that appears in connection with the promotion and advertisement for sale of a Playtex 18 hour comfort lace wire free bra." *Id.* ¶ 20. "All three published images (Sears, Kmart and Boscov's) were without authorization by Plaintiff[.]" *Id.* ¶ 21. Consequently, Tesfay alleges that "Defendant[] continued to generally use Plaintiff's image in internet advertising/promotion through its customer's websites." *Id.* ¶ 23.

The AC alleges that "[u]pon information and belief, Defendant has a licensing agreement with" Sears, K-Mart, and Boscov's (the "Licensees") "and others that govern[s] the use of Defendant's trademarks and copyrights and images that it controls (under license or otherwise)." *Id.* ¶ 17; *see also id.* ¶ 15 ("[U]pon information and belief, Sears, Kmart, [and] Boscov's are licensees of Defendant.").

Tesfay "was never compensated after 2012 for use of her images." *Id.* ¶ 22. Hence, Tesfay alleges that Hanes "has been commercially using Plaintiff's images" in an unauthorized manner "for a period of nearly seven (7) years without compensating Plaintiff[.]" *Id.* ¶ 24.

**D. Procedural History**

On March 13, 2019, Tesfay commenced this litigation in New York state court, alleging breach of contract and violation of New York Civil Rights Law section 51 ("Section 51"). Notice of Removal, Dkt No. 6, at 1. Hanes subsequently removed the case to federal court. *Id.* After removal, Tesfay filed an amended complaint, again asserting causes of action for breach of contract and violation of Section 51. Dkt No. 17. Hanes filed its motion to dismiss and an accompanying memorandum of law on July 29, 2019. Dkt No. 24; Memorandum of Law in Support of Defendant's Motion to Dismiss the Amended Complaint ("Mem."), Dkt No. 25. Thereafter, Tesfay filed her opposition, Memorandum of Law in Opposition to Defendant's Motion to Dismiss the

Amended Complaint ("Opp."), Dkt No. 29, and Hanes filed its reply, Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss the Amended Complaint, Dkt No. 30.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded factual allegations and draws all inferences in the plaintiff's favor. *See Palin v. N.Y. Times Co.*, 933 F.3d 160, 165 (2d Cir. 2019) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)); *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 544). Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**III. DISCUSSION**

**A. Breach of Contract**

Hanes moves to dismiss Tesfay's claim for breach of contract. *See* Mem. at 9-14. Because the Agreement states that it "will be governed by the laws of the State of New York[,]" the Court applies New York law to the breach of contract claim. Agreement at 12. "To state a claim for breach of contract under New York law, 'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)).

The parties dispute whether Hanes has failed to perform because they disagree as to the correct interpretation of the Agreement. Tesfay argues that Hanes breached section 6 of the Agreement, entitled "Cessation of Use." Opp. at 5; *see also* Agreement at 11. That provision states that "[u]pon the termination or expiration of all Use Periods, Client shall not *use* the Images or produce, ship, or distribute any Material incorporating the Images[.]" Agreement at 11 (emphasis added). Tesfay argues that Hanes breached the Agreement by continuing to use images of her after the Agreement terminated. Hanes argues that the AC does not adequately allege that it has "used" images of Tesfay after the Agreement terminated because the images were allegedly published or circulated by the Licensees, not Hanes itself. Thus, the Court must interpret the Agreement to decide whether Tesfay has plausibly alleged that Hanes used images of her after the termination of the Agreement.

**1. Legal Standard**

Under New York law, the initial interpretation of a contract is a matter of law for the court to decide. This initial interpretation includes "the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs. v. These Certain Underwriters at Lloyd's*, 136 F.3d

7

82, 86 (2d Cir. 1998) (quotations omitted); *accord, e.g., W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) ("Whether or not a writing is ambiguous is a question of law to be resolved by the courts."). Contract language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Sayers v. Rochester Tel. Corp. Supplemental Management Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993); *see also Breed v. Insurance Co. of North Am.*, 46 N.Y.2d 351, 355 (1978) (noting that no ambiguity exists when contract language has "a definite and precise meaning" about which "there is no reasonable basis for a difference of opinion"). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Hunt, Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989).

A court applying New York law "may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case." *Bank of New York Mellon v. WMC Mortg., LLC*, 12CV7096 DLC, 2015 WL 2449313, at *2 (S.D.N.Y. May 22, 2015) (quoting *Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir. 1992)). Rather "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 645 (2009) (quotation omitted).

### 2. Application to the Agreement

The Agreement is unambiguous, and it does not support Tesfay's breach of contract claim. The allegation of breach in the AC is that "Defendant has been commercially using Plaintiff's images for a period of nearly seven (7) years without compensating Plaintiff all while ostensibly making millions of dollars off of Playtex items sold with Jordan's image on said items." AC ¶ 24. Specifically, Tesfay alleges that "images from the original photo shoot appeared in use on multiple 'customer' web sites" and "as part of a hard copy circulated publication to residents of New

8

Jersey[.]" *Id.* ¶¶ 19-20. Tesfay's opposition argues that "Defendant breached the Model Agreement by failing to adhere to the Cessation of Use provision when it continued to use Plaintiff's Images on 'advertising and display on websites designated by Client' or 'web sites owned by Client's customers' upon the termination or expiration of all Use Periods.'" Opp. at 6 (quoting Agreement at 9-10). Hence, Tesfay argues that Hanes breached section 6—the Cessation of Use provision—of the Agreement when Tesfay's images were published by Hanes' customers.

The plain meaning of the word "use" does not support Tesfay's proposed interpretation. "Use" means to "to put into action or service" or to "avail oneself of." Use, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/use. Tesfay has not alleged that Hanes used her images; rather, she has alleged that the Licensees used the images in their advertising materials. The definition of "use" simply does not support Tesfay's interpretation. Tesfay effectively asks the Court to read the contract to require not only that Playtex not use images of her, but that it also take affirmative steps to prevent third parties from doing so. But the contract does not require Playtex to take such steps, and the Court will not rewrite the Agreement to impose liability on Hanes for a use by the Licensees.

The alleged licensing agreement between Hanes and the Licensees also does not support Tesfay's argument that Hanes has continued to use her images. The AC alleges that "Defendant has a licensing agreement with these customers and others that govern[s] the use of Defendant's trademarks and copyrights and images that it controls (under license or otherwise)." AC ¶ 17. Tesfay argues that Hanes used Tesfay's images by permitting them to be posted on the Licensees' websites or distributed in the Licensees' advertising materials. However, the AC fails to allege that Tesfay's images are subject to these licensing agreements, or that Defendant obtains any indirect benefit from the licensing of images that might constitute a "use." Therefore, the allegations regarding a licensing agreement in the AC are insufficient to establish that Hanes "used" Tesfay's

9

images in violation of the Agreement.

Nor can Tesfay succeed under an agency theory because she has not alleged a sufficiently close relationship between Hanes and the Licensees to support her claim that Hanes used her images. Tesfay alleges that the Licensees are both customers and licensees of Hanes. AC ¶¶ 15-17. The AC has not alleged that the Licensees' use of Tesfay's images was the result of Hanes' direction or control, as required to establish an agency relationship. *See In re Shulman Transp. Enters., Inc.*, 744 F.2d 293, 295 (2d Cir. 1984) ("An essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control."). In addition, the AC does not allege that Hanes authorized or encouraged the Licensees to use Tesfay's image in their advertising materials after the termination or expiration of all Use Periods defined in the Agreement. Indeed, the AC does not allege that Hanes was aware of these uses by the third-party Licensees. Because it lacks such allegations, the AC does not plausibly allege a "use" by Hanes as a result of the license agreement with the Licensees.

Tesfay attempts to bolster her interpretation by pointing to the defined term "General Uses" in the Agreement. *Id.* at 9-10. "General Uses" includes "[a]ll Internet uses, including advertising and display on web sites designated by Client and on web sites owned by Client's customers." *Id.* Tesfay argues that "the term General Use—as defined in the Model Agreement—is the closest proxy for what the parties meant by the term 'use'" in section 6. Opp. at 6. Therefore, Tesfay argues that the definition of General Uses supports her interpretation that "use" in section 6 can encompass actions by Hanes' customers.

This argument is unpersuasive because General Uses is a defined term, which the Agreement does not use in the allegedly breached provision. The term General Uses defines the scope of Hanes' and its customers' permissible uses of images of Tesfay while the Agreement was in effect. Agreement at 9-10. This has no bearing on what it means to "use" the images of Tesfay, as that

10

term is employed in section 6.[9] In essence, Tesfay asks the Court to rewrite section 6 of the Agreement to substitute the defined term "General Use[]" for the undefined term "use" or to include a clause prohibiting Hanes from permitting its customers to use Tesfay's image after the termination of the Agreement. But the Court cannot redraft the contract to impose an obligation on Hanes for which it did not bargain. *See Cruden*, 957 F.2d at 976. Hence, Tesfay's citation of the definition of General Uses is unavailing.

Accordingly, the Court concludes that Tesfay has not adequately alleged that Hanes breached the Agreement when its customers published images of Tesfay. Hanes' motion to dismiss Tesfay's breach of contract claim is therefore granted. The Court grants Tesfay leave to replead this claim. *See Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013) ("[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead.") (citation omitted).

**B. N.Y. Civ. Rights Law § 51**

Hanes also moves to dismiss Tesfay's claim for breach of Section 51 of the New York Civil Rights Law.[10] *See* Mem. at 14-17. "In order to establish a violation of section 51, a plaintiff must show that the defendant made use, within the state of New York, of plaintiff's name, portrait, or picture 'for advertising purposes or for the purposes of trade' without plaintiff's written consent." *Titan Sports, Inc. v. Comics World Corp.*, 870 F.2d 85, 87 (2d Cir. 1989) (quoting N.Y. Civ. Rights Law § 51 and citing *Brinkley v. Casablancas*, 438 N.Y.S.2d 1004, 1007 (1st Dep't 1981)); *see also Marshall v.*

---

[9] If anything, the inclusion of third-party uses within the scope of "General Uses" cuts against Tesfay's interpretation because it suggests that the parties knew how to include third-party uses within the definition of a defined term when they chose to do so. However, in section 6, the parties chose not to use a defined term that explicitly included third-party uses.

[10] *See* N.Y. Civ. Rights Law § 51 ("Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait, picture or voice, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait, picture or voice in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages.").

11

*Marshall*, 504 F. App'x 20, 23 (2d Cir. 2012) ("To establish a violation of Section 51 of the New York Civil Rights Law," a plaintiff must allege "(1) the use of his name, portrait, or picture, (2) for purposes of advertising or trade, (3) without consent, (4) within the state of New York.") (citing *Titan*, 870 F.2d at 87).

Tesfay's allegations fail to state a claim for a breach of Section 51 for the same reason as did her breach of contract claim: She has failed to allege that Hanes made use of her image as required by the first element of a Section 51 claim. The AC contains the conclusory allegation that Hanes "has been using Plaintiff's image, likeness, and picture for advertising or trade purposes within the State of New York . . . without Plaintiff's written consent." AC ¶ 31. This is a legal conclusion, not a factual allegation, and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

The AC does not adequately allege that Hanes used images of Tesfay. Like the text of a contract, the New York Court of Appeals "has held 'repeatedly' that 'where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning.'" *City of New York v. Golden Feather Smoke Shop, Inc.*, 08-CV-3966(CBA), 2009 WL 2612345, at *29 (E.D.N.Y. Aug. 25, 2009) (collecting cases) (quoting *Samiento v. World Yacht Inc.*, N.Y.3d 70, 78 (2008)). The plain meaning of "use" does not support Tesfay's interpretation that the Licensees used Tesfay's image when they— and not Hanes—published her images. Consequently, Tesfay has not adequately alleged the first element of a claim for violation of Section 51 and Hanes' motion to dismiss is granted. The Court grants Tesfay leave to replead this claim. *See Cruz*, 742 F.3d at 523.

## IV. CONCLUSION

Hanes' motion to dismiss is GRANTED as to both causes of action in the AC. However, the Court has granted Tesfay leave to replead both claims. Any amended complaint must be filed no later than January 15, 2020.

12

The Clerk of Court is directed to terminate the motion pending at Dkt No. 24.

SO ORDERED.

Dated: December 17, 2019
New York, New York

_____
GREGORY H. WOODS
United States District Judge